**FARM MACHINERY INCORPORATED, a corporation, d/b/a Myhra Equipment Company, and W. J. Paulson, Plaintiffs and Respondents,**

v.

**Paul BRY, Defendant and Appellant.**

**No. 7622.**

Supreme Court of North Dakota.

April 25, 1957.

Daniel S. Letnes, Grand Forks, for appellant.

Shaft, Benson & Shaft, Grand Forks, for respondents.

SATHRE, Judge.

This is an action by the plaintiffs to recover from the defendant the sum of $2,800 and interest from the 22nd day of September 1953. On that date the plaintiffs, Farm Machinery Incorporated, doing business as Myhra Equipment Company, entered into a conditional sales contract with the defendant for sale and delivery to him of certain potato harvesting machinery for which the defendant agreed to pay $7,119. On said date a memorandum, plaintiffs' exhibit 2, was signed by the defendant, Paul Bry, itemizing the machinery purchased and the price thereof. The memorandum contained the following notation:

"1800 bags of 1 A potatoes on board car or truck or $2800.00 plus interest.

$$\begin{aligned} &\$7119.00 \\ &\phantom{\$}2800.00 \end{aligned}$$

Balance     $4319.00 "

The 1,800 bags of potatoes or the $2,800 and interest was to be the down payment upon said conditional sales contract. It was the understanding of the parties at the time when said memorandum was made,

that the defendant had the option of making the initial payment upon the conditional sales contract by delivering the 1,800 bags of potatoes, or by making a cash payment in the sum of $2,800 and interest. It was also the understanding that the potatoes if delivered would be from the 1953 crop.

The plaintiff, W. J. Paulson, became owner of one-half interest in the contract between the plaintiff Farm Machinery Incorporated and the defendant Bry through assignment to him by the plaintiff Farm Machinery Incorporated.

The defendant made no delivery of potatoes to the plaintiffs from the 1953 crop, and on March 22, 1954, the parties entered into another agreement and the following memorandum, plaintiffs' exhibit 3, was made and signed by the defendant: "Del to Myhra Eqp. Co. 1800 US No. 1–A size on or before Jan. 31, 1955 to be loaded on car or truck at Manvel, N. D. in new bags." (signed) Paul Bry.

No delivery of potatoes was made by the defendant on January 31, 1955 and several extensions of the time of delivery were made thereafter and agreed to by the parties.

The defendant did not at any time make delivery of the potatoes nor did he pay the $2,800 and interest as provided by the terms of the original agreement. Thereafter the plaintiffs brought this action for recovery of the $2,800 and interest. The complaint alleges the execution of the conditional sales contract and the agreement that the defendant was to pay, as down payment, 1,800 bags of 1 A potatoes and that the defendant further agreed that if he failed to deliver said potatoes he would pay the plaintiff $2,800 with interest. It is then alleged that on the strength of said agreement the defendant was credited with $2,800 on said conditional sales contract and that thereafter the plaintiff Farm Machinery Incorporated sold one-half interest in said potato contract to plaintiff W. J. Paulson. It is further alleged that on the 22nd day of March 1954, at defendant's request, plaintiffs extended the date for delivery of the potatoes to January 31, 1955; that on or about January 31, 1955 plaintiffs demanded delivery of the potatoes but that the defendant was unable to make such delivery, and that thereafter the defendant wholly failed to make delivery of potatoes in violation of the original agreement. Judgment was demanded for the sum of $2,800 and interest.

Defendant answered admitting the execution of the conditional sales contract and alleged that under the terms thereof he had the option of delivering 1,800 bags of potatoes or to pay $2,800 and interest as a down payment; that on April 15, 1955 he offered to pay plaintiffs $2,800 and interest which offer was refused. As a further defense he alleged that on or about the 20th day of May 1955 the plaintiffs accepted delivery of certain graded and sacked potatoes which defendant had processed in his warehouse in Manvel, North Dakota, pursuant to the terms of the agreement of September 22, 1953, and all amendments and extensions thereof; that thereafter the plaintiffs through their authorized agent and manager, J. E. Kohler, advised defendant that they would not take delivery of the processed potatoes which the defendant had ready for shipment at the warehouse in Manvel, North Dakota; that plaintiffs refused to accept the delivery thereof in violation of the contract of purchase of September 22, 1953 and amendments thereof, and left the potatoes in defendant's warehouse until they deteriorated, rotted and became valueless. Judgment was demanded for dismissal of the action.

The action was tried in the district court of Grand Forks County as a jury case, trial having commenced January 27, 1956.

At the close of all of the testimony the plaintiffs made a motion for a directed verdict as follows:

"Plaintiff at this time in Chambers and in the absence of the jury and in the presence of the attorney for de-

fendant moves the court for a directed verdict of $2800.00 plus interest from September 22, 1953 on the grounds that the evidence is undisputed, and that there is obligation from the defendant to the plaintiff for that amount or for the delivery of 1800 bags of US 1–A potatoes. That the defendant has failed to show any valid legal tender of either the money or the property as required by the statute and has failed entirely to prove or to offer any evidence of any other defense to the obligation.

"Or in the alternative for a directed verdict for the plaintiff for the value of the 1800 bags of US–1A potatoes as the jury may determine that value to be on or about the 25th day of May 1955 for the same reasons and the same grounds as heretofore stated and for the further reason that all of the evidence and testimony clearly shows that plaintiff and defendant maintained a continuous negotiation up until the 25th day of May 1955 and it was on that date that negotiations were ended and the breach in the contract occurred."

The defendant resisted the motion and in turn made the following motion for a directed verdict in his favor for dismissal of the action:

"Let the record show that the defendant resists both motions and in addition the defendant renews his motion that this Court direct a verdict for the dismissal of this action on the grounds and for the reason, 1, that by plaintiffs' own admission the time of performance, that is delivery of 1800 bags of US 1–A potatoes was mutually extended to some future date which date was never finally established and which date the plaintiff admits is still open and that as of this date the defendant could make delivery of the 1800 bags of US–1A potatoes. 2, The additional reason the plaintiff has admitted that the contract was modified to the extent that

should the potatoes in the Bry warehouse fail to make Government inspected US–1A grade that the defendant had the option and privilege of substituting other potatoes of other grades to make up the difference in value based on the market price for such grades of potatoes at the time of such delivery. 3, That the prayer in the complaint at least implies that the plaintiffs are entitled to judgment of the $2800.00 and interest instead of a prayer for damages for some alleged breach of the contract and that thereby the plaintiff has elected to ask for the amount which is alleged yet unpaid but not due and owing pursuant to the memorandum agreement and that therefore the action is premature. 4. For the additional reason that since the defendant had the option of either supplying 1800 bags of US–1A grade potatoes or paying the sum of $2800.00 and interest that until a definite date of performance was designated and/or agreed upon the defendant could not be held at this time for being in default."

After these motions were made the following discussion took place between the court and counsel:

The Court: "If I understand the situation correctly then, Mr. Letnes you feel that the value of the potatoes as specified might be somewhat less than $2800.00?"

Mr. Letnes: "Yes, your Honor."

The Court: "Plus interest as we have talked about it and that regardless of what the decision of the court may otherwise be that at least,—if the matter of value is an issue, that you want that passed upon by the jury. The matter of value of the potatoes you wish to have it passed upon by the jury as advisory to the court."

Mr. Letnes: "Yes, your Honor."

The Court: "All right."

"In view of motions as made and in view of the entire record I now find

that this becomes a question—the issues involved here become, a question for the Court to determine; that they are in the first place largely questions of law both with reference to whether or not so-called tenders have been made during the proceedings and whether or not there has been any socalled performance of the contract which existed between the parties and so the Court then is going to take the entire case under consideration except as to this, that I am going to submit to the jury one special question for the Court's guidance and that is the question as to what 1800 100 pound bags of US-1A potatoes were reasonably worth on or about the 25th day of May, 1955. I am going to use that date as the time involved for the reason that the testimony is undisputed in this case that the time for delivery of the potatoes was extended beyond January 31, 1955 as designated in the memorandum of March 22, 1954, and that such time by the actions of the parties was continually advanced up and until what I regard as a deadline, May 25, 1955 at which time it is undisputed in this testimony that for some reason or other the plaintiffs then definitely refused to accept even if they had been delivered to them, the potatoes, any of the potatoes that were on hand in defendant's warehouse near Manvel, North Dakota, basing such refusal as the plaintiffs suggest upon the condition of the potatoes."

Mr. Letnes: "At this time your Honor, I would take exception to the Court's action in taking this matter before the jury. I except to the decision of the Court."

Mr. Benson: "I will so stipulate that the plaintiffs are not asking for more than $2800.00 plus interest at the legal rate from the 22nd day of September 1953 to the date that the action was brought, regardless of whatever valuation that might be placed by the jury upon the potatoes in excess of such amount."

■ Since both parties made motions for directed verdicts the issues of both law and fact became questions for determination by the trial court. The court however submitted a special question to the jury which together with their finding thereon is as follows:

"What was the reasonable value of 1800 100 pound bags of white potatoes such as cobblers US-1A on or about May 25, 1955, such potatoes to be sacked in new bags?

"Verdict
"We the jury find such value at $2250.00
"Robert Griffith, Foreman"

The court found for the plaintiffs on all the issues and ordered judgment in their favor in the sum found by the special verdict of the jury. Judgment was entered accordingly and defendant appealed from the judgment and assigned the following specifications of error:

"1. The judgment is contrary to the evidence.

"2. The trial court erred in refusing to direct a verdict in favor of the defendant-appellant.

"3. The trial court erred in admitting evidence over objection on the matter of damages for breach of contract where plaintiffs-respondents had failed to allege such damages in the complaint and where the complaint was one for a claim for money due under a contract.

"4. The trial court erred in finding defendant-appellant was in default under a contract to deliver certain potatoes.

"5. The trial court erred in finding that the defendant-appellant was obligated to deliver 1800 bags of US 1—size A potatoes to plaintiffs-respondents at a date not later than May 25, 1955.

"6. The court erred in admitting evidence at variance with the pleadings."

The case is not here for trial de novo. Specifications 1, 3, and 6 are not well taken and need not be considered here. Specifications 2, 4, and 5 present for consideration the question whether the evidence is sufficient to sustain the findings of the trial court.

The trial court found, and the evidence is undisputed, that on September 22, 1953, the defendant purchased certain machinery from the plaintiff Farm Machinery Incorporated, under a conditional sales contract, and that it was agreed that he could make a cash down payment of $2,800 or in lieu thereof deliver to the plaintiff 1,800 bags of US-1 potatoes, and accordingly defendant was credited with $2,800 on his contract; that thereafter the plaintiff Farm Machinery Incorporated assigned a one-half interest of the contract with the defendant to W. J. Paulson who thereafter by consent of the parties was impleaded as a plaintiff. The delivery of the potatoes was to be made out of the 1953 crop. No delivery from the 1953 crop was made, and on March 22, 1954 by agreement of the parties the time for delivery of the potatoes was extended to January 31, 1955, delivery to be made on board car or truck at Manvel, North Dakota. No delivery was made on January 31, and the plaintiffs extended the time of delivery to May 25, 1955.

 There is a dispute in the testimony as to whether the defendant had at any time graded for delivery to plaintiffs a sufficient quantity of potatoes of the quality agreed upon by the parties. The defendant testified that on or about May 20, 1955 he graded a certain quantity of potatoes in his warehouse and that he notified the plaintiffs that the potatoes were ready for delivery, but that plaintiffs refused to accept them. The manager of the plaintiffs, John Kohler, testified however, that he and one Albert Bushey were in defendant's potato warehouse on or about May 25, 1955; that they inspected the potatoes and found that they had deteriorated to such an extent as to be unfit for human consumption, and for that reason plaintiffs refused to accept delivery. He testified further that the defendant had not made payment or legal tender of payment of $2,800 and interest, in lieu of delivery of the potatoes, as he was required to do under the agreement between the parties. The trial court found that the defendant was in default, both as to delivery of the potatoes and as to the cash payment or legal tender thereof and ordered judgment in favor of the plaintiffs.

After a careful consideration of the entire record we conclude that the evidence is sufficient to sustain the findings of fact as made by the trial court, and accordingly the judgment is affirmed.

GRIMSON, C. J., and MORRIS, BURKE and JOHNSON, JJ., concur.